IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 13-cv-01115-LTB

KATRINA M. HAYS,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

---

ORDER

---

Plaintiff Katrina M. Hays appeals from the Social Security Administration Commissioner's (the "Commissioner") final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), filed pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument will not materially aid in resolving this appeal. After considering the parties' arguments and the administrative record, for the reasons below, I affirm the Commissioner's final order**.**

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her November 7, 2006 applications for DIB and SSI. [Administrative Record ("AR") Doc. # 11-5, 2-11]. Her application was initially denied at the administrative level. [*Id.* at 11-4, 2-5]. Plaintiff thereafter filed a written request for a hearing on March 20, 2007. [*Id*. at 6-7]. An Administrative Law Judge ("ALJ") subsequently conducted a hearing on July 29, 2008 (*id.* at 11-2, 58-78), and issued a written ruling on January 7, 2011 (*id.* at 9-27). The ALJ denied Plaintiff's application

on the basis that she was not disabled during the relevant time period because she was capable of performing work in the national economy given her residual functional capacity ("RFC"), age, education, and work experience. [*Id.* at 20-21]. Plaintiff appealed the denial of her application to the Social Security Administration Appeals Council ("Appeals Council"). [*Id*. at 11-2, 2-6]. On May 13, 2011, the Appeals Council declined to review the decision of the ALJ, making the denial final for the purpose of judicial review. [*Id.* at 2-7]. Plaintiff then requested review by this Court. On March 13, 2012, this Court remanded the case for further proceedings and instructed the ALJ to more extensively evaluate Plaintiff's RFC and opinion evidence. [*Id.* at 11-13, 10-11].

Upon remand, the ALJ held another hearing on November 14, 2012. [*Id.* at 11-12, 29-57]. On November 28, 2012, the ALJ issued another decision finding Plaintiff not disabled. [*Id.* at 10-23]. Plaintiff filed exceptions with the Appeals Council on December 21, 2012, of which the Appeals Council declined to assume jurisdiction on March 13, 2013. [*Id*. at 2-5]. Thus, the ALJ's decision was the final decision of the Commissioner for purposes of judicial review.

Plaintiff timely filed her Complaint with this Court seeking review of the Commissioner's final decision. [Doc. # 1].

## II. FACTS

The facts are largely undisputed and extensively provided in the ALJ's order. As such, I provide a limited factual background as relevant here.

Plaintiff was born on July 11, 1972, was 34 years old on her alleged amended onset date of September 28, 2006, and was 40 at the time of the ALJ's decision at issue here. [AR Doc. # 11-5, 2]. She has a high school education, is able to communicate in English, and her past

relevant work history consists of assembly technician, forklift operator, clerical worker, and car driver. [*Id.* at 11-2, 21]. Pursuant to 20 C.F.R. § 404.130, in order to be eligible for benefits, Plaintiff must prove that her disability began before the date through which she remained insured, which in this case is December 31, 2011. [*Id.* at 13]. Thus here, the relevant time period for determining disability is September 28, 2006, through November 28, 2012, the date of the ALJ's decision. [*See id.*]; 20 C.F.R. § 404.130.

During the relevant time period Plaintiff earned no income. [*Id.* at 15] Plaintiff injured her wrist at work on October 13, 2005. [*Id.* at 11-8, 90]. Plaintiff filed a workers' compensation claim and was examined and treated by Michael A. Dallenbach, M.D. [*Id*. at 2-71]. Immediately after her injury, Dr. Dallenbach told Plaintiff not to use her right upper extremity. [*Id.* at 67-71]. Two weeks after her injury, he released her to return to work with the temporary restriction to not work in safety sensitive positions. [*Id.* at 68-70]. Dr. Dallenbach provided that Plaintiff's injury was "improving" in November 2005 and continued the temporary restrictions on her performance of work related tasks. [*Id*. at 64-67]. As her treatment progressed, Dr. Dallenbach gradually increased the amount Plaintiff could lift and the amount of time she could lift with her right upper extremity. [*Id.* at 61-64]. However, in January 2006, Dr. Dallenbach noted that Plaintiff had a ganglion cyst in her right wrist and referred Plaintiff to Phillip C. Marin, M.D. for "further evaluation and treatment recommendations." [*Id*. at 22]. He provided that after surgery, performed by Dr. Marin, Plaintiff could return to work in a full capacity. [*Id.* at 60]. After Plaintiff's surgery, Dr. Dallenbach continued to see Plaintiff through 2007. [*Id.* at 11-94-33].

On referral from Dr. Dallenbach, Plaintiff sought treatment from Phillip C. Marin, M.D. [*Id.* at 79-105]. Dr. Marin treated Plaintiff for her De Quervains tenosynovitis (a condition affecting the tendons on the thumb side of the wrist). [*Id.*] Throughout his treatment of Plaintiff he performed four surgeries on Plaintiff's right wrist, and completed two check-box questionnaires related to her condition (one in April 2008 and one in October 2010). [*Id.*; *see also id*. at 11-10, 63-64; 11-11, 26-27]. Dr. Marin performed his first surgery on Plaintiff's wrist in March of 2006, after which Plaintiff was restricted from use of her right hand/wrist until June 2006, when Dr. Marin provided that she could use her hand on a limited basis. [*Id.* at 11-8, 79-105]. Dr. Marin performed his second surgery on Plaintiff's wrist for a De Quervains release and radial sensory nerve decompression. [*Id.* at 84]. In April 2007, Plaintiff underwent her third surgery with Dr. Marin for a TFCC debridement on her wrist and in January 2008, Dr. Marin removed sensitive scar tissue from Plaintiff's wrist. [*Id*. at 79-105].

In August 2006, Plaintiff underwent a Functional Capacity Evaluation performed by Barry D. Brown, P.T. (Physical Therapist). [*Id.* at 11-7, 17-43]. Based on this evaluation, Mr. Brown concluded that Plaintiff could perform medium level work with some limitations of her wrist. [*Id.*]. Mr. Brown examined Plaintiff again in October 2010 to complete another Functional Capacity Evaluation at which Mr. Brown concluded that Plaintiff could perform sedentary work. [*Id.* at 64-65].

Dipesh Amin, M.D., performed a consultative examination of Plaintiff in March 2008. [*Id.* at 11-8, 113-17]. Dr. Amin noted Plaintiff's wrist/hand and knee pain and provided that Plaintiff could lift and carry up to 10 pounds continuously, 11-20 pounds occasionally, could reach, handle, and finger occasionally with the right hand, could sit for an unlimited amount of

time, and could stand and walk for four hours at a time, and four hours in a workday. [*Id.*] He also limited her ability to climb and crawl because of her right wrist. [*Id.*]

In July 2008, Robert Tuchler, M.D., performed an independent medical examination of Plaintiff. [*Id.* at 11-10, 78-87]. During the examination, Dr. Tuchler noted that Plaintiff "entered the examination room with a large purse hung on her affected forearm and did not display discomfort" and "[w]hen her attention was not directed toward her hand, she made a complete fist and moved the wrist without any signs of discomfort, and less limitation in range of motion than when it was specifically tested." [*Id.*] Dr. Tuchler observed no objective evidence of reflex sympathetic dystrophy or complex regional pain syndrome and recommended Plaintiff follow the activity restrictions and accommodations in the most recent FCE, which limited Plaintiff to performing medium work, monitoring her right wrist and hand, and alternating with her left hand to avoid repetition strain. [*Id.*]

In July 2012, Plaintiff saw nurse practitioner and reported suffering from migraine headaches. [*Id.* at 11-18, 33-34].

## III. LAW

To qualify for DIB under sections 216(i) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB for a period of disability, and be "disabled" as defined by the SSA. 42 U.S.C. §§ 416(i), 423. A Five-Step sequential evaluation process is used to determine whether a claimant is disabled under the SSA, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity. If she is, DIB is denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for DIB. *See* 20 C.F.R. § 404.1520(c). Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed Residual Functional Capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

As relevant here, a claimant is required to establish that she became disabled prior to the expiration of her insured status. 20 C.F.R. § 404.130; *see also Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1347-48 (10th Cir. 1990).

## IV. ALJ's RULING

The ALJ found that Plaintiff had met the insured requirements of the SSA through December 31, 2011. [AR Doc. # 11-2, 15]. She ruled that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 28, 2006, through the date Plaintiff was last insured, December 31, 2011. [*Id.*] The ALJ found that through the date last insured, the Plaintiff had the following sufficiently severe impairments: right upper extremity pain status post surgeries; right knee degenerative joint disease; and obesity (Step Two). [*Id.* at 16]. However, the ALJ then determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1. [*Id*. at 17]. Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equals a listed impairment, she then assessed Plaintiff's RFC. [*Id*. at 17-21].

The ALJ evaluated the evidence and found that through the date last insured, Plaintiff had the RFC to perform work "light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)," with the following limitations:

> [Plaintiff] could lift and/or carry ten pounds frequently and twenty pounds occasionally with her left non-dominant upper extremity; should avoid lifting and/or carrying with her right dominant upper extremity and should not use her right upper extremity other than as an assist; could perform pushing and/or pulling motions with her left upper and lower extremities within the aforementioned weight restrictions but should not push and/or pull with her right upper or lower extremities; could perform activities requiring bilateral dexterity for both fine and gross manipulation with handling and reaching but should only occasionally perform overhead reaching, handling, fingering, and feeling with her right upper extremity; should avoid unprotected heights; and should not climb ladders, ropes or scaffolds.

[*Id.* at 17-18]. As a result of Plaintiff's RFC assessment, the ALJ found that Plaintiff was not

able to perform any of her past relevant work (Step 4). [*Id.* at 21]. Because the ALJ concluded at Step Four that Plaintiff was unable to perform any of her past relevant work, the ALJ continued to Step Five, and under that Step concluded that there were other jobs existing in the national economy that Plaintiff was able to perform. [*Id*. at 21-22]. Consequently, the ALJ concluded that Plaintiff was not disabled between her alleged onset date and the date last insured. [*Id.* at 22-23].

## V. STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to determine whether the factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied." *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003). My review of the factual findings is to determine whether they, "are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted). It requires "more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

## VI. APPEAL

Plaintiff challenges several of the ALJ's determinations at Step Four. First, Plaintiff contends that the ALJ's evaluations of Plaintiff's treating physicians, Dr. Phillip Marin and Dr. Michael Dallenbach, were improper. Second, Plaintiff contends that the ALJ's evaluations of

examining physician's Dr. Dipesh Amin's opinion was improper. Lastly, Plaintiff contests the ALJ's evaluation of the opinions of Barry Brown and Laura Darnell. I address each of Plaintiff's arguments in turn below.

**A. ALJ's Evaluation of Treating Physician's Opinion**

Plaintiff argues that the opinions of his treating physicians, Dr. Phillip Marin and Dr. Michael Dallenbach, were well supported by the evidence, not contradicted by any other medical evidence, and thus should have been given controlling weight. For the reasons below, I disagree.

The parties do not dispute that Dr. Marin and Dr. Dallenbach were treating sources. According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F .R. § 404.1527(c)(2). In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). A treating physician's opinion is accorded this weight because of the unique perspective they have to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ must first determine whether the opinion is conclusive– that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at

1330. To do so, the ALJ:

> [M]ust first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [ . . . ] [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F3d at 1300 (*applying* SSR 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If, however, a treating physician's opinion is not entitled to controlling weight, the ALJ must proceed to the next step because, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F3d at 1300. At Step Two, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. If this is not done, remand is mandatory. *Id.* As SSR 96-2p explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *4) (emphasis added). Hence, the absence of a condition for controlling weight raises, but does not resolve the second, distinct question of how

much weight to give the opinion. *Id.* at 1330-31 (*citing Langley*, 373 F.3d at 1120) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis")). In weighing the opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331. In applying these factors, "an ALJ must 'give good reasons in the notice of determination or decision' for the weight he ultimatel[y] assign[s] the opinion." *Watkins*, 350 F.3d at 1300 (*quoting* 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). Without these findings, remand is required. *Watkins*, 350 F.3d at 1300-01; *accord Krauser*, 638 F.3d at 1330. Lastly, if the ALJ rejects the opinion entirely, he must give "specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

**1. Dr. Marin**

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Marin, who treated Plaintiff for her issues with her right wrist and hand from 2002 to 2008. [AR. Doc. # 11-8, 79-105, 127-28; 11-9, 69-84]. In addition to Dr. Marin's treatment notes, Dr. Marin provided his opinion as to Plaintiff's condition in two worksheets provided by Plaintiff's attorney, dated April 30, 2008, and October 6, 2010. [*Id.* at 11-10, 100-03; 11-11, 24-26]. In the 2008 worksheet, Dr. Marin provided that Plaintiff had recently undergone wrist surgery to excise

atrophic scars on Plaintiff's right wrist and rearrange the surrounding tissue. [*Id.* at 11-10, 101]. Dr. Marin provided that Plaintiff, who he said was at maximum medical improvement, could occasionally lift 10-15 pounds and could carry 10 pounds. [*Id.*] The worksheet also provided that Plaintiff could seldom finger and could occasionally reach and handle with her right hand, and could perform all three of these tasks constantly with her left hand. [*Id.* at 102]. The 2010 worksheet provided that Plaintiff could lift and carry 5 pounds occasionally, could never reach, handle or finger with her right hand and could perform all these tasks constantly with her left hand. [*Id.* at 11-11, 24-26].

In determining that Dr. Marin's opinions were not entitled to controlling weight, the ALJ explained that Dr. Marin's opinions as to Plaintiff's limitations were not well-supported by the record as a whole, lacked objective support or clinical findings, were inconsistent with each other, were check the box workshees, and were inconsistent with other substantial evidence in the record, including his own treatment notes. [*Id.* at 11-12, 20]. The ALJ's determination at this step was proper. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (holding that if a treating physician's opinion is inconsistent with other substantial evidence in the record it is not entitled to controlling weight).

The ALJ then moved to the second step of the analysis and provided the weight to be given to Dr. Marin's opinions in his examination records and the two worksheets. In determining that Dr. Marin's opinions in the worksheets were entitled to little weight, the ALJ cited four of the factors from 20 C.F.R. § 404.1527(c): Dr. Marin's opinions were based on visits related to Plaintiff's treatment of issues with her right wrist; the worksheets were not supported by other evidence in the record; the worksheets were not consistent with each other; and Dr.

Marin's opinions were not consistent with the other substantial evidence, including his own examination records (AR Doc. # 11-12, 20). *See* 20 C.F.R. §§ 404.1527(c)(2)(treatment relationship), 404.1527(c)(3)(supportability), 404.1527(c)(4)(consistency), and 404.1527(c)(5)(specialization). In regards to Dr. Marin's treatment relationship, the ALJ pointed out that Dr. Marin primarily saw Plaintiff for treatment of Plaintiff's wrist issues and the worksheets were limited to this treatment. [AR Doc. # 11-12, 20]. In regards to supportability, the ALJ discussed that not only were the two worksheets inconsistent with one another, but also pointed out that Dr. Marin's own treatment notes did not support the worksheets' restrictions, nor did other evidence in the record support them. [*Id.*] The ALJ emphasized that Dr. Marin's worksheets were inconsistent with other objective evidence in the record. [*Id.*]. The ALJ also provided specific examples of the worksheets' inconsistency: the 2008 worksheet was inconsistent with the 2010 worksheet in that in 2008 Dr. Marin limited Plaintiff to lifting and carrying 10-15 pounds occasionally, and in 2010, Dr. Marin reported that Plaintiff's condition had been stable since 2006 and that Plaintiff was limited to lifting and carrying no more than 5 pounds occasionally. [*Id.*] The ALJ also noted that the fine motor restrictions on the two worksheets were inconsistent with one another. [*Id.*]

Based on a review of the record, I find that the ALJ did not err when she gave Dr. Marin's opinions little weight. The ALJ properly noted the limited depth of treatment by Dr. Marin, that Dr. Marin's limitations were inconsistent with other objective evidence in the record, and that Dr. Marin's worksheet opinions were inconsistent with each other and other evidence in the record. Additionally, the ALJ's findings are in line with Dr. Robert Tuchler's medical consultation, which the ALJ gave great weight. [*See id.* at 20-21]. Thus, the ALJ appropriately

gave little weight to Dr. Marin's opinions inasmuch as they were inconsistent. *See Plummer v. Apfel*, 186 F.3d at 429 (recognizing that a practitioner's opinion may be rejected if there is contradictory medical evidence); 20 C.F.R. § 404.1527(d)(3) (specifying that the "more a medical source presents relevant evidence to support an opinion, . . . the more weight we will give that opinion").

Accordingly, I find no error in the ALJ's decision to give Dr. Marin's opinion little weight, *see Watkins*, 350 F.3d at 1301, which is supported by substantial evidence in the record.

**2. Dr. Dallenbach**

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Dallenbach, a workers' compensation attorney who saw Plaintiff once in 2002 and again from 2005-2007. [AR. Doc. # 11-8, 2-71; 11-9, 33-62]. In Dr. Dallenbach's treatment notes, Dr. Dallenbach treated Plaintiff for her issues with her right wrist and hand. [*Id.*] He frequently stated that Plaintiff's condition and limitations were temporary and often that her condition was improving. [*Id.*] He did not provide any restrictions as to Plaintiff's abilities except to indicate whether she could work or not. [*Id.*] Specifically, he frequently provided that, aside from the times she was recovering from her surgeries performed by Dr. Marin, she could continue to work a "modified duty" with "temporary restrictions." [*See e.g. id.* at 11-8, 47-69]. However, he did provide in one report that Plaintiff was "unable to function in the work environment in any gainful capacity." [*Id*. at 11-9, 35-36]. Dr. Dallenbach also provided that she had a 10% whole person impairment rating which provided that Plaintiff was limited as to use of her right hand/wrist and that she could use her right hand/wrist for self care, grasping, and holding, but

has difficulty with digital dexterity. [*Id.* at 39].

In determining that Dr. Dallenbach's opinions were not entitled to controlling weight, the ALJ explained that Dr. Dallenbach's opinions as to Plaintiff's limitations were not well-supported by the record as a whole and were inconsistent with other substantial evidence in the record, including his own treatment notes. [*Id.* at 11-12, 20]. The ALJ's determination at this step was proper. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (holding that if a treating physician's opinion is inconsistent with other substantial evidence in the record it is not entitled to controlling weight).

The ALJ then moved to the second step of the analysis and provided the weight to be given to Dr. Dallenbach's opinions in his examination records. In determining that Dr. Dallenbach's opinions were entitled to little weight, the ALJ cited two of the factors from 20 C.F.R. § 404.1527(c): Dr. Dallenbach's opinions were not supported by other evidence in the record; and Dr. Dallenbach's opinions were not consistent with the other substantial evidence, including his own examination records, (AR Doc. # 11-12, 20). *See* 20 C.F.R. §§ 404.1527(c)(3)(supportability), 404.1527(c)(4)(consistency). In regards to supportability, the ALJ discussed that not only did Dr. Dallenbach's own treatment notes not support his restrictions, but that other evidence in the record also did not support it. [*Id.*] The ALJ emphasized that Dr. Dallenbach's treatment notes provided that Plaintiff's physical therapy was helping, that her condition seemed to be improving and that he assessed only a 10% whole person impairment rating. [*Id.*] These reports are in line with Dr. Robert Tuchler's medical examination findings, which the ALJ gave great weight. [*See id.*] As to inconsistency the ALJ provided while Dr. Dallenbach reported that Plaintiff's physical therapy was helping, that her

condition was improving, that she had a 10% whole person impairment rating, and that he consistently reported in his treatment notes that she could continue to work a modified job position, Dr. Dallenbach also reported that Plaintiff was unable to work. [*Id.*]

I conclude that the ALJ did not err when she gave Dr. Dallenbach's opinion little weight. The ALJ properly noted that Dr. Dallenbach's opinions were not supported by other evidence in the record and were inconsistent with the other substantial evidence, including his own examination records. *See Plummer v. Apfel*, 186 F.3d at 429 (recognizing that a practitioner's opinion may be rejected if there is contradictory evidence); 20 C.F.R. § 404.1527(d)(3) (specifying that the "more a medical source presents relevant evidence to support an opinion, . . . the more weight we will give that opinion").

**B. ALJ's Evaluation of Examining Physician's Opinion**

As discussed in the section above, an ALJ must consider the opinions of reviewing physicians and evaluate them based on the factors listed in 20 C.F.R. § 404.1527(a) to (d), "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations [the physicians] provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii). Unless the opinion of a treating source is given controlling weight, an ALJ must explain the weight given to the opinion of a reviewing physician. *Id.*

Plaintiff argues that the ALJ failed to properly consider the opinions of examining source Dr. Dipesh Amin. According to 20 C.F.R. § 404.1527(c)(2), if the medical opinions in the record are inconsistent with each other, the ALJ must weigh all the evidence. *See* 20 C.F.R. §

404.1527(d). However, if medical opinions are consistent, the ALJ need not weigh them. 20 C.F.R. § 404.1527(c)(1). Dr. Amin's reports of Plaintiff's reported limitations, including a good amount of standing, use of fine motor skills, and required breaks are consistent with Dr. Tuchler's report as well as the ALJ's assessed limitations. Because Dr. Amin's report is consistent with regards to the determinative factors, the ALJ did not err in not identifying the weight she gave to Dr. Amin's opinion.

**C. ALJ's Evaluation of Other Sources' Opinions**

Plaintiff argues that the ALJ's evaluations of opinions of two other sources, Barry Brown, physical therapist and Laura Darnell nurse practitioner, were improper.

Physical therapists and nurse practitioners are not acceptable medical sources. As a consequence, their opinions are not considered true "medical opinions" as defined by the regulations, and they are not entitled to special weight afforded to acceptable treating medical sources. *See* 20 C.F.R. §§ 404.1513(d)(1); 404.1527(a)(2). Nevertheless, the assessment of a physical therapist or nurse practitioner's opinion must include evaluation of the same factors as those generally applied to opinions of physicians. *See* 20 C.F.R. § 404.1527(d) [now § 404.1527(c) ] for assessing "other" opinions; *see also* SSR 06-3p, 2006 WL 2329939, at * 4-5; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (discussing "other sources" under SSR 06-3p).

**1. Mr. Brown**

Plaintiff contends that the ALJ improperly gave Mr. Brown's opinion little weight. Here, the ALJ considered the appropriate factors in determining what weight to give Mr. Brown's opinion. [*See* AR Doc. # 11-12, 20]. She specifically pointed to the inconsistency of Mr. Brown's two opinions with one another as well as with other substantial evidence in the record. [*Id.*] She pointed out that in 2006 Mr Brown assessed Plaintiff as able to perform the duties of medium work and in 2007 Mr. Brown assessed Plaintiff as only able to perform sedentary work based on Plaintiff's refusal to perform many of the tasks requested. [*Id.*] She also noted that the 2007 examination, due to Plaintiff's refusal to perform many of the tasks requested, was thus only based on Plaintiff's subjective complaints, which the ALJ did not find credible and which is not contested here. [*Id.*] Because Mr. Brown's reports were inconsistent and based on incredible subjective reports by Plaintiff, it was reasonable for the ALJ to discount Mr. Brown's opinions.

**2. Ms. Darnell**

Plaintiff contends that the ALJ failed to weigh Ms. Darnell's treatment notes reporting that Plaintiff suffered from migraine headaches. However, only information from "acceptable medical sources" can be used to establish the existence of a medically determinable impairment, though information from sources that are not "acceptable medical sources" can be used to show the severity of an impairment. SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006). Ms. Darnell is not an "acceptable medical source" because she is not a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist or a qualified speech-language pathologist. 20 C.F.R. § 404.1513(a). Rather, as a nurse practitioner she is an "other source"

under 20 C.F.R. § 404.1513(d)(1).

In the entirety of Plaintiff's medical record, Ms. Darnell provides the only report of Plaintiff suffering from migraine headaches. No acceptable medical sources report the existence of Plaintiff's migraines. Thus, Ms. Darnell's report that Plaintiff suffers from migraine headaches cannot establish these alleged migraine headaches as a medically determinable impairments, and the ALJ's decision to not consider it was proper.

## VII. CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order.

Dated: September 2, 2014, in Denver, Colorado.

BY THE COURT

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE